EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☐ EEOC | Agency(ies) Charge No(s):<br>ED(R) 0098-23<br>16D-2023-00120 |
|---|---|---|

New Hampshire Commission for Human Rights                and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Laura Di Piazza | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 208 Brook Hollow | Hanover, NH 03755 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Trustees of Dartmouth College | 500+ | (603) 646-1110 |

| Street Address | City, State and ZIP Code |
|---|---|
| Office of the General Counsel, Hinman Box 6002<br>63 South Main Street, Suite 301 | Hanover, NH 03755 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☒ OTHER (Specify) RSA 354-A

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 9/26/22   Latest: 1/6/23

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

See attached.

RECEIVED
MAR 24 2023
NH Commission for Human Rights

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: March 23, 2023
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

My Comm. Exp. 11/10/26

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)* 3/23/23

Laura Di Piazza v. Trustees of Dartmouth College
Charge of Discrimination

1. The respondent began employing me as an Executive Assistant to Senior Vice President and Senior Diversity Officer Delalue in or around March of 2022.

2. I was qualified for my employment position and performed my job duties well.

3. I suffer from disabling impairments substantially limiting me in one or more major life activities.

4. In or around the late spring or early summer of 2022, the respondent's ADA Coordinator met with me at my request regarding my disabling impairments and my potential need for accommodations. I disclosed my impairments to the ADA Coordinator. The ADA Coordinator disclosed to me that, in her experience, people afflicted with my impairment suffer stereotyping.

5. The ADA Coordinator and I discussed that having written instructions for my employment tasks would help me perform the essential functions of my job.

6. The ADA Coordinator encouraged me to visit the respondent's Human Resources department.

7. This recommendation led to my meeting with the respondent's Associate Director, ADA/504 Compliance, Paul Harwell.

8. My discussions with Associate Director Harwell resulted in an accommodation plan for me that became effective September 26, 2022. The accommodation plan contained four (4) parts, described as follows in a September 26, 2022, letter from the respondent memorializing the plan: "(1) Performance feedback provided in writing and verbally; (2) Communication plan for confirming understanding. Specifically, we have collectively agreed upon a strategy where Laura will summarize information presented verbally into a written list of action items that will be shared with her supervisor for confirmation (typically via email). Laura's supervisor is expected to respond to this written communication if this list is missing a crucial detail or task. Responses may be in writing or verbal as needed. Laura intends to deploy this strategy for verbal communications with more than 2-3 discretely separate tasks or instructions given in a single conversation; (3) Access to assistive technology that provides automatic transcripts during presentations and meetings. Currently this can be accomplished via auto-captioning in Zoom and via the Otter.ai software for in-person meetings; [and] 4.) Permission to create audio recordings of meetings for the purpose of creating personal notes when the above options are not viable. Recordings should be for personal use only and may not be distributed without prior approval from meeting attendees. When possible, permission should be gathered prior to the meeting via consultation with supervisor."

9. The respondent advised me that a meeting would occur in January of 2023 "to discuss the effectiveness of these accommodations."

10. The respondent largely failed and refused to abide by the accommodation plan it had implemented.

Laura Di Piazza v. Trustees of Dartmouth College
Charge of Discrimination

11. My supervisor told me in or around October of 2022 that she found it too burdensome to confirm my written summaries of her instructions.

12. My supervisor refused to allow me to use the Otter.ai software in meetings because she claimed the software made her feel "uncomfortable."

13. My supervisor refused to allow me to create audio recordings of meetings.

14. I reported to the respondent's ombudsman my supervisor's failure and refusal to honor my accommodation plan. The ombudsman sought and received from me permission, in or around early November of 2022, to address with Human Resources my supervisor's refusal to follow my accommodation plan.

15. My supervisor then placed me on a performance improvement plan on November 21, 2022. The plan provided me thirty (30) days to cure alleged performance deficiencies, further stating that my supervisor would meet with me twice during the 30-day period to address my progress. Only one (1) such meeting occurred, on or about November 29, 2022, when my supervisor advised me that I was improving.

16. The respondent notified me of my termination on January 6, 2023, effective January 9, 2023.

17. The respondent never held the January, 2023, meeting on my accommodation plan promised me on September 26, 2022, when the respondent implemented my accommodation plan.

18. The respondent discriminated against me because of my disability by denying me the reasonable accommodations it had promised me, by placing me on an unwarranted performance improvement plan, and by firing me.

19. As a direct and proximate result of the respondent's disability discrimination, I have suffered and continue to suffer damages, including but not limited to lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience and loss of enjoyment of life.